Hamilton, J.
Plaintiff in error, Ludie Clifford Shelton, alias James Shelton, was convicted in the court of common pleas of Hamilton county of murder in 'the first degree on a count in the indictment charging him with the killing of William H. Dieters, while said plaintiff in error was perpetrating or attempting to perpetrate a robbery.
It appears from the record that the decedent, Dieters, a police officer, while on duty as such, was killed on Freeman avenue ¡in the city of Cincinnati about 11:30 p. m. on the night of August 28, 1918. It appears that the plaintiff in error, Shelton, together with a man named Chandler, were on the west side of Freeman avenue, acting in a suspicious manner; that Dieters, the police officer, met them and stopped them, inquiring as to where they *377 were going and what they were doing at that time of the morning. Not giving a satisfactory answer, the officer made some examination of Shelton, but ■did not discover a revolver which Shelton had in ■his trousers on the right side of the waist band. Thereupon the officer turned his attention to Chandler, and, while searching Chandler, Shelton drew his revolver, pointing it at the officer and ordering him to throw up his hands, which the officer did, and then he, Shelton, ordered Chandler to take from the officer his gun. Chandler, in obedience to the order of Shelton, put his hand in the pocket of the officer, but instead of getting his revolver took his flashlight. At that time the officer moved for some purpose, whereupon Shelton fired the shot which struck the officer near the heart, passing through the diaphragm, resulting in his death while on the way to the General Hospital. Shelton and Chandler .ran, and were at liberty for some time, but were later apprehended and brought to trial.
The only defense offered at the trial was Shelton’s -claim that he did not intend to shoot the officer, that he -wanted to take the officer’s revolver from him so that he could get away, but that his, Shelton’s, revolver was accidentally discharged.
'During the argument of the case to the jury counsel for defendant undertook to argue that under certain conditions a jury had a right to consider mercy, but was interrupted by the trial court and was denied the right to argue the question of mercy to the jury.
Plaintiff in error urges that the verdict and judgment are against the weight of the evidence. *378 It would serve no purpose to enter into an analysis or discussion of the evidence, as the facts are briefly above set forth. We have carefully read the record, keeping in mind the importance of the case before us, and we find the verdict and judgment to be fully sustained by the evidence.
The question raised by counsel for plaintiff in error on the refusal of the court at the trial to allow counsel for defendant to argue the question of mercy to the jury is not without difficulty. The statute of Ohio (Section 12400, General. Code) provides:
“Whoever, purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or attempting to perpetrate rape, arson, robbery or burglary, kills another is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life.”
This question has never been passed upon directly by the courts of the state of Ohio, nor by the courts of other states having like provision of law on their statute books. It was held by the supreme court of Ohio in State v. Ellis, 98 Ohio St., 21, that the question of mercy was not a proper subject upon which to examine a prospective juror upon his voir dire.
In the case of State v. Thorn, 39 Utah, 208, the supreme court held it to be improper for the trial court to charge the jury in such a way as to instruct its members how to consider the question of mercy. The court used the following language:
“It undoubtedly is the law, that the jury, in the event they found the prisoner guilty of murder in *379 the first degree, had the absolute right to recommend a punishment of life imprisonment, and that the making or withholding of the recommendation was a matter entirely within their discretion to be exercised in any manner and for any reason they saw fit, and that they ‘should be left free to dispose of the question without any intimation of the court as to what should control or influence them in reaching a conclusion upon it/ ”
In the case of People v. Kamaunu, 110 Cal., 609, on the question of the discretion of the jury to recommend mercy, the court in the opinion used the following language:
“This discretion is given to the jury, and the court can not direct or advise them upon the subject further than to inform them of their function.” In the case of Newton v. State, 21 Fla., 53, at page 101, the court say in the opinion:
“But after stating to the jury that the recommendation to mercy is in the discretion of the jury, where the law has placed it, it is improper to attempt to control them in its free exercise according to their own judgment of the merits of the case. The law is positive. If a majority of the jurors recommend to mercy, by whatever motives they may be actuated (and these motives are not circumscribed), the court is bound to heed their verdict, and pronounce sentence accordingly.”
In the case of Winston v. United States, 172 U. S., 303, at page 313 of the opinion, the court say:
“The instructions of the judge to the jury, in each of the three cases now before this court, clearly gave the jury to understand that the act of Congress did not intend or authorize the jury to *380 qualify their verdict by the addition of the words without capital punishment, unless mitigating or palliating circumstances were proved.
“This court is of opinion that these instructions were erroneous in matter of law, as undertaking to control the discretionary power vested by Congress in the jury, and as attributing to Congress an intention unwarranted either by the express words or by the apparent purpose of the statute.”
In the case of State v. Ellis, supra, the court make use of the following language:
“The decisions of course are quite uniform that the trial judge may not advise or direct the jury touching a recommendation of mercy; and, if the judge may not do so, why should counsel be permitted to commit the jurymen in advance, either .one way or the other, touching such recommendation? The jury should he left entirely free to consider that question after they have agreed upon a verdict of murder in the first degree
While, as above stated, the cases cited and quoted from do not decide the precise question, they do show the interpretation of the statute to mean that the jury should be left alone to determine within their own conscience, without rhyme or reason, the recommendation of mercy. The question of mercy is not one to be considered until after the agreement of a verdict of guilty. Any discussion, therefore, by counsel or by the court would necessarily be predicated upon the proposition that the defendant was to be found guilty. When counsel for defendant present an argument to the jury appealing jco them for a recommendation of mercy, the question immediately presents itself as to why, if the *381 defendant is innocent, such a proposition should be presented at the time. The defendant would be immediately placed at the disadvantage of having counsel, who are there to defend, conceding by their argument a point against him. We again refer to the Ellis case, supra, as supporting this •conclusion. The language used by the court is:
“The jury should be left entirely free to consider that question after they have agreed upon a verdict of murder in the first degree.”
If we are to be guided by the general rules relative to arguments to the jury, it becomes clear at once that the argument on the question of mercy would be improper. The rule is that counsel may argue to the jury only from the evidence submitted in the case and the reasonable deductions to be made therefrom. Appeal to the passion and prejudice of the jury has no place in the trial of a case. It has been uniformly held that the recommendation of mercy is not based upon mitigating or palliating circumstances, nor the evidence in the case. Under this rule the only purpose an argument on the question of mercy would serve would be to appeal to the passion and prejudice of the jury, without regard to the evidence or the reasonable deductions to be made therefrom. If counsel for defendant is permitted to make an appeal to the sympathy of the jury on the question of mercy, counsel for the state would have the right to make an argument as to why mercy should not be extended, and the arguments of counsel, instead of serving their lawful purpose, would degenerate into an appeal on the one hand to the sympathy of the jury and on the other hand to their prejudices.
*382 We are, therefore, of opinion that the question of mercy as provided in the statute is a privilege to be exercised by the jury, only after they have found the defendant guilty of murder in the first degree, and the question has no place for consideration until after this has taken place. It has been held that the court may call their attention to this provision of the statute, but can go no farther, and that it is not error to omit any mention of this provision of the statute.
We are, therefore, of opinion that the question of mercy is not a proper subject for argument by counsel at the trial of the case to the jury, and that the court did not err in refusing to permit counsel for defendant to so argue.
Finding no error in the record, the judgment will be affirmed.

Judgment affirmed.

Cushing, J., concurs.